UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JULIE ANN MILLER,<br>    Plaintiff, | : <br> : <br> : | CIVIL ACTION NO.<br>3:17–cv–1734 (JCH) |
| v. | : <br> : | |
| NANCY A. BERRYHILL, Acting<br>Commissioner, Social Security<br>Administration,<br>    Defendant. | : <br> : <br> : <br> : <br> : | DECEMBER 5, 2018 |

**RULING RE: MOTION TO REVERSE DECISION OF THE COMMISSIONER (DOC. NO. 25) & MOTION TO AFFIRM DECISION OF THE COMMISSIONER (DOC. NO. 28)**

**I.  INTRODUCTION**

Plaintiff Julie Ann Miller ("Miller") brings this appeal under section 405(g) of title 42 of the United States Code from the final decision of the Commissioner of the Social Security Administration ("SSA"), which denied her application for Title II disability insurance benefits ("SSDI") and Title XVI supplemental security income ("SSI").  See Complaint ("Compl.") (Doc. No. 1).  Miller seeks reversal or remand of the Decision rendered by Administrative Law Judge ("ALJ") Ryan A. Alger, which affirmed the Commissioner's denial.  See Mot. to Reverse the Decision of the Commissioner ("Mot. to Reverse") (Doc. No. 25).  The Commissioner cross-moves for an order affirming that Decision.  See Mot. to Affirm the Decision of the Comm'r ("Mot. to Affirm") (Doc. No. 28).

For the reasons set forth below, the Motion to Reverse or Remand is **DENIED.** The Motion to Affirm the Decision of the Commissioner is **GRANTED.**

1

## II. PROCEDURAL HISTORY

Miller applied for disability insurance benefits on April 21, 2015, and supplemental security income benefits on April 25, 2015, alleging a disability onset date of January 5, 2014 in both applications. See R. at 18. The Commissioner denied Miller's application initially on October 20, 2015, and again upon reconsideration on April 20, 2016. See id. Miller requested a hearing with an ALJ, which was held before ALJ Alger on February 16, 2017. See id. Miller did not attend the hearing, but an attorney representing her was present. See id.

On April 26, 2017, ALJ Alger issued an unfavorable decision for Miller, affirming the Commissioner's denial and finding that Miller was not disabled. See id. at 33. Specifically, ALJ Alger found that Miller's impairments did not meet or equal any listing, see id. at 22–24, and that, with her level of residual functional capacity ("RFC"), there were jobs in the national economy that she could perform, see id. at 32. Miller requested review by the Appeals Council, which denied the request on May 23, 2017. See id. at 1–4 (Notice of Appeals Council Action). Following that denial, ALJ Alger's April 26, 2017 Decision became a final decision reviewable by this court. See id. Miller filed this appeal on October 13, 2017. See Compl.

## III. FACTS[1]

Miller was born in 1976, and she was 40 at the time of her hearing in February 2017. See R. at 272. She was previously employed as a bookkeeper and in accounts

---

[1] The facts are taken from the administrative record, from the Defendant's Statement of Facts (Doc. No. 28-2), and from Miller's Motion to Reverse (Doc. No. 25). Miller did not file a separate Statement of Facts, nor did the parties file a Stipulation of Facts. See Scheduling Order (Doc. No. 24) ("To expedite the courts consideration of these motions, counsel for the parties must confer to prepare a Stipulation of Facts based on the administrative record.")

payable, before leaving that work in 2014 due to pain from her medical conditions.  See id. at 274–75.  Miller also worked intermittently in 2016, though her income fell below the level established for substantial gainful activity.  Id. at 234, 241.

Miller's medical history for the purpose of her disability claim begins in January 2014, when she presented at a clinic reporting of back pain.  Id. at 336–37.  An x-ray revealed minor degenerative changes of the lower lumbar spine.  Id. at 338.  Miller reported severe back pain during a visit to UConn Health Center in May 2014.  Id. at 345.  Imaging showed evidence of mild stenosis and disc desiccation.  Id. at 345, 347.  During this time period, Miller did not report radiculopathy.  Id. at 348.

Miller also visited a physician at the Hartford Medical Group in May 2014.  She again reported back pain, and examinations indicated that, while she had full range of motion and walked with a normal gait, the lumbar area was tender to the touch, and a straight leg test[2] resulted in increased pain.  Id.  The treating medical provider also noted that Miller presented with a depressed affect.  Id. at 404. The treating provider noted similar mental and physical impressions at an appointment in July 2014.  See id. at 418–26.

Miller returned to Hartford Medical Group in February 2015.  The medical provider advised Miller to engage in relaxation exercises, and to avoid heavy lifting.  Id. at 430. Miller presented with a normal gait, range of motion, and muscle strength.  Id. at 431.  At a further examination in April 2015, Miller again reported lower back pain; a

---

[2] A straight leg raise test is used as part of diagnosing lumbar disc herniation, lumbar radiculopathy, and/or sciatica.

3

straight leg test was negative, and Miller had full range of motion in the lumbar spine. Id. at 433–34.

Miller saw Pamela Campbell, a registered nurse and licensed therapist, for counseling, beginning in April 2015. Id. at 369–71. Miller presented as neat, but with restricted mood and a tense posture. Id. at 369. Miller stated she sought therapy for assistance dealing with the emotional side-effects of quitting smoking, as well as for assistance with her struggle with back pain. Id. at 371.

At a June 2015 visit to Hartford Medical Group, Miller presented with an "abnormal" mood, described as depressed, dysphoric, and futile. Id. at 445. She was assessed as presenting with acute anxiety and generalized anxiety disorder. Id. at 443. Physically, however, Miller presented with normal gait, and her musculature was described as "grossly normal." Id. at 445. In an August 2015 visit to the same facility, Miller presented with a normal mood and affect. Id. at 453.

Miller attended two consultative examinations. The first took place in August 2015. At that examination, Miller's range of motion in her extremities was normal, as was her grip strength and manipulation. Id. at 381. While Miller presented with a normal gait and was able to move without assistance, a straight leg test conducted during the exam was positive bilaterally. Id. The second consultative examination, this one psychological, took place in October 2015. Miller described her mental impairments, including emotional distress and panic attacks. Id. at 386. Miller reported that she was able to drive, go for walks, and engage in yoga. Id. at 388. She presented as logical and coherent, while displaying a depressed and tearful affect. Id. at 386.

4

Miller demonstrated an ability to spell a word backwards, recall a series of digits, and interpret a proverb. Id. at 387.

Miller again visited Hartford Medical Group in November 2015. She presented with back pain. The physician noted that it was unclear why Miller's condition was causing her the reported amount of pain, given the lack of significant stenosis and because Miller was ambulating "fine." Id. at 483. The provider concluded Miller should be referred to a pain specialist. Id.

Miller sought treatment with a licensed counselor in January 2016. Miller presented as depressed and anxious, but cooperative. Id. at 560. Miller also exhibited organized thinking and intact cognition. Id. Miller was seen by a different provider the following month. Id. at 570. She presented with an "appropriate" affect, as well as organized, logical thoughts. Id.

## IV. STANDARD OF REVIEW

Under section 405(g) of title 42 of the United States Code, it is not a function of the district court to review de novo the ALJ's decision as to whether the claimant was disabled. See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). Instead, the court may only set aside an ALJ's determination as to social security disability if the decision "is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence requires "more than a mere scintilla," but is a "very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447–48 (2d Cir. 2012). It requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 448. If the Commissioner's findings of fact are supported by substantial evidence, those findings

5

are conclusive, and the court will not substitute its judgment for the Commissioner's. 42 U.S.C. § 405(g) (2016); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

**V. DISCUSSION**

The court understands Miller to argue that that ALJ Alger's decision should be reversed or remanded for four reasons.[3] First, she argues that contrary to the ALJ's finding, there was good cause for her failure to appear at the scheduled hearing in February 2017. Second, she argues that her attorney was ineffective in representing her at the hearing. Third, she argues that the ALJ committed error in relying on the conclusions of the vocational expert. Fourth, she argues that the ALJ failed to adequately develop the record. The court addresses each argument in turn.

  A.  Good Cause for Failure to Appear at Hearing

Before proceeding to the merits of Miller's claim, ALJ Alger addressed Miller's failure to appear at the hearing that took place on February 16, 2017. R. at 18. The ALJ noted that, while Miller did not attend the hearing, her attorney was present. Id. At the hearing, after conferring with Miller's counsel, ALJ Alger stated that the hearing would go forward, and that Miller's attorney would have the opportunity to question the vocational expert. Id. at 48. The ALJ stated that Miller would be given an opportunity to seek a supplemental hearing. Id. at 48. Following the hearing, Miller was sent a Notice to Show Cause for Failure to Appear. Id. at 193–95. Miller's response indicated she was unable to attend the hearing because (1) she was homeless, (2) she was unable to

---

[3] Miller has filed this appeal pro se. Accordingly, the court liberally construes her submissions. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).

6

obtain transport to the hearing, despite contacting several people, and (3) her back pain precluded travel via public transport. Id. at 196.

ALJ Alger concluded that Miller's response did not demonstrate good cause for failure to attend the hearing. Id. at 19. ALJ Alger referred to the Hearings, Appeals, and Litigation Law Manual ("HALLEX"), specifically HALLEX I-2-4-25, which provides guidance as to procedural requirements when a claimant fails to appear for a hearing. See HALLEX I-2-4-25. The ALJ determined that Miller's stated reasons for her absence did not constitute good cause because (1) Miller had notice, through her attorney, of the time and place of the hearing; (2) lack of transportation was foreseeable, such that Miller should have provided advanced notice to the agency of her inability to attend the hearing; and (3) the record did not support a finding that Miller was unable to understand the notice of the hearing provided to her. R. at 19. Based on these conclusions, the ALJ denied Miller's "implicit request for a second hearing." Id.

The Commissioner argues that the ALJ was correct to conclude that Miller had failed to show good cause for failure to appear because the circumstances to generally establish good cause listed in HALLEX "are not present in this case." Def.'s Mem. at 5. The court notes that the HALLEX guidance expressly states that "there are no set criteria for determining what constitutes good cause for failure to appear at the time and place of a scheduled hearing," and that good cause "generally exists" in the listed circumstances. HALLEX I-2-4-25(C)(1). A plain reading of the guidance indicates that the listed circumstances, which are (1) improper notice of the hearing, (2) an unforeseeable event, and (3) withdrawal of representation without notice, are not

7

exhaustive, but instead represent the cases in which good cause for absence from a hearing will most frequently be found.

Notwithstanding that the list of circumstances establishing good cause is not exhaustive, the court concludes that the ALJ did not commit legal error in ruling that Miller did not show good cause for failure to attend the February 2017 hearing. Miller does not contest that she had notice of the hearing, and it is clear from the record that both Miller and her attorney were provided written notice of the time and place for the hearing. R. at 164. Miller's attorney acknowledged at the hearing that Miller had knowledge of the proceedings. Id. at 47 (noting attorney's discussion with Miller the previous day). Miller therefore had adequate time to provide notice to the agency that she required a postponement of the proceedings.[4]

Applicable regulations allow for a claimant to object to the time or place of a hearing by notifying the agency, in writing "not later than 5 days before the date set for the hearing or 30 days after receiving notice of the hearing, whichever is earlier," providing "the reason(s) for your objection and stat[ing] the time and place [the claimant] want[s] the hearing to be held." 20 C.F.R. § 416.1436. There is no evidence in the record that Miller, either individually or through counsel, filed such an objection. And, aside from a single allegation in Miller's Complaint, see Compl. at 4, there is no evidence on the record that Miller requested another means of attendance, such as video or telephone conferencing.

---

[4] Emails between Miller and her attorney the day before the scheduled hearing indicate that Miller wanted to proceed with the hearing, and that she did not wish to seek an extension. See Compl. at 12.

Absent evidence on the record that Miller, either individually or through her attorney, made efforts to inform the agency prior to the date of the hearing of her potential absence, to secure a postponement, to secure alternative means of attendance, or to supplement the record after the hearing, as allowed to by the ALJ, see R. at 5, the court concludes that the ALJ did not commit legal error by finding that Miller failed to show good cause for her failure to appear.

B. Ineffective Assistance

The court understands Miller to argue that her attorney provided ineffective assistance at the administrative hearing. See Compl. at 4; Memorandum in Support of Motion to Reverse or Remand the Decision of the Commissioner ("Miller Mem.") (Doc. No. 25) at 18.[5] Claimants have a statutory right to representation at disability hearings, see 42 U.S.C. § 406, but the right to representation in the administrative context differs from the right to representation afforded by the Sixth Amendment.

District courts in this Circuit have disagreed as to whether ineffective assistance claims may be raised in the context of Social Security proceedings. Compare Johnson v. Barnhart, No. 04 CIV 5574(HB), 2005 WL 2993933, at *3 (S.D.N.Y. Oct. 7, 2005) (no right to competent counsel in Social Security proceedings); Bovino v. Comm'r of Soc. Sec., No. 97-CV-2496 (JG), 1998 WL 812596, at *4 (E.D.N.Y. Apr. 8, 1998) (same), with Prestia v. Colvin, No. 6:13-CV-01559 MAD, 2015 WL 1417738, at *3 (N.D.N.Y. Mar. 27, 2015) (reaching merits of ineffective assistance claim in social security claim, while noting that right "falls well below" the standard in criminal cases).

---

[5] The filed document is titled "Memorandum and Order to Reverse and/or Remand the Decision of the Commissioner of the Social Security Administration." The court construes the filing to be a Memorandum in Support of Miller's Motion for Remand and/or Reversal.

9

At least one federal appeals court has remanded a social security case based on ineffective assistance of counsel. See Arms v. Gardner, 353 F.2d 197 (6th Cir.1965). A review of the case law makes clear, however, that even if the claim is recognized, remand based on ineffective assistance of counsel in Social Security proceedings is exceptionally rare. In Arms, the Sixth Circuit remanded a social security appeal where the claimant's attorney "took no part in the examination of witnesses, offered no testimony on appellee's behalf and gave the appellee no apparent legal assistance in the preparation of the case, admitting of the record that he knew very little about Social Security laws." Arms v. Gardner, 353 F.2d at 199.

Similarly, the cases in which district courts have remanded social security cases detail extraordinarily ineffectual representation. In Baez v. Astrue, the court remanded a social security case where a claimant's representative was "completely ineffective with regard to a key aspect of the case." Baez v. Astrue 550 F. Supp. 2d 210, 217 (D. Mass. 2008). The claimant in Baez sought reversal or remand of the Commissioner's denial of her claim for SSDI. Id. at 211–12. At the administrative hearing, the representative told the ALJ that he was unaware of any application by his client for SSI, and that the case was therefore solely a claim for SSDI. Id. at 217. Based on this representation, the ALJ assumed that the claimant never filed an SSI application. Id. at 218. The district court remanded the case for further proceedings, based on the representative's failure to be aware, and to make the ALJ aware, that the claimant had not only previously filed an SSI application, but had been approved for SSI benefits based on a psychiatric condition. See id. 217–18. ("[H]ad the ALJ known that an SSI application had not only

10

been filed but approved, he may well have not deemed Plaintiff's claim insurmountable.'" Id. at 218

In Tillman v. Weinberger, where the district court also remanded based on ineffective assistance of counsel, "[t]he attorney of record for the claimant who was accepting the case on a fee basis did not bother to appear." Tillman v. Weinberger, 398 F. Supp. 1124, 1129 (N.D. Ind. 1975). Instead, the claimant was represented at the hearing "and apparently prior thereto by a law student or law graduate." Id. At the hearing itself, the claimant's non-lawyer representative "misunderstood the relevant issues," including the type of disability claim the claimant was raising, and the type of evidence relevant to the claim at issue. See id. at 1130 ("Since age, vocational history and educational attainments are not considered in widow's disability cases much of the testimony brought out by the representative was totally irrelevant.").

In this case, unlike in Baez and Tillman, the record does not support a finding of ineffective assistance at or prior to the administrative hearing. Miller has not alleged that her attorney failed to provide support in preparation of the case or the development of the record. The court notes that Miller's attorney was, at best, passive at the administrative hearing—the attorney declined to make an opening statement and did not cross-examine the one witness, the vocational expert. However, that alone does not rise to the level of ineffective assistance. Miller's attorney advised her about the date and time for the hearing. The record details communication about the date and time for the hearing, and Miller's express wishes not to seek an extension. See Compl. at 11–12. Her passivity notwithstanding, Miller's attorney was present to represent

Miller at the hearing and advised Miller after the hearing of her right to supplement the record. See id. at 13.

Unlike in Baez and Tillman, there were no significant gaps in the record that Miller's attorney failed to note, nor was there evidence that she misunderstood the substantive legal issues of the case. The few cases where courts have remanded proceedings have involved extraordinary facts, including outright absence from the hearing, admitted lack of knowledge of the relevant law, or complete lack of awareness of evidence regarding issues central to the outcome of the case. See supra at 10–11. While the representation Miller received was far from perfect, her attorney's performance did not rise to the level of severely lacking representation warranting remand. Thus, Miller's request for remand based on ineffective assistance is denied.

    C.    <u>Objections to ALJ Disability Determination</u>

The Social Security Administration has established a five-step, sequential evaluation process to determine whether a claimant is disabled within the meaning of Title II and Title XVI. 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an individual or aggregate "determinable physical or mental impairment that meets the duration requirement." 20 C.F.R. §§ 404.1520(4)(ii), 416.920(4)(ii). At step three, the ALJ determines whether the claimant's impairments, either individually or in aggregate, meets or equals one of the listings in an appendix to the regulations. Between step three and step four, the ALJ determines the claimant's Residual Functional Capacity ("RFC"), the claimant's ability to do work activities despite her impairments. At step four, the ALJ determines whether, based on

the claimant's RFC, the claimant could perform her past relevant work. If the claimant cannot perform past relevant work, the ALJ moves on to step five, where the ALJ determines whether the claimant is able to perform any other work, and whether such work exists in significant numbers in the national economy.

The court understands Miller to argue that (1) the ALJ's determination as to Miller's RFC was not supported by substantial evidence on the record, and (2) the ALJ erred in relying on the testimony of the vocational expert as a basis for finding that Miller was not disabled within the meaning of the relevant statutes and regulations. The court addresses each argument in turn.

      1. RFC Finding

While Miller directly objects to the testimony of the vocational expert, see Miller Mem. at 23, the Commissioner contends that Miller's objection was in fact directed at the ALJ's RFC determination. Def.'s Mem. at 12–13. The court must construe pro se submissions liberally. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). Therefore, before addressing the vocational expert's testimony, the court addresses whether the ALJ's determination of Miller's RFC was supported by substantial evidence on the record.

The ALJ is required to make a determination as to the claimant's RFC between Step Three and Step Four of the disability evaluation process. In making that decision, the ALJ is required to consider all of the available evidence, including the claimant's medical record, statements from medical sources about the claimant, and descriptions

provided by other people, including the claimant, about her impairments.  See 20 C.F.R. §§ 404.1545; 416.945.

After taking into account Miller's reported symptoms, the statements of treating and consultative medical providers, and the medical and anecdotal evidence, the ALJ determined that Miller had the RFC to perform "light work" as defined in 20 CFR § 404.1567.  R. at 24.  In reviewing Miller's physical impairments, the ALJ noted that the evidence indicated that Miller occasionally suffered from "occasional neck and lower back pain, tenderness, and partially reduced ranges of motion."  Id. at 26.  However, the ALJ concluded that the evidence also showed that Miller "frequently had a normal gait, full strength of the bilateral upper and lower extremities," and could sit for the duration of examinations without discomfort.  Id.

The ALJ's conclusion as to Miller's physical impairment was based on a review of multiple diagnostic imaging reports, which indicated "[m]ild degenerative changes" to the lumbar spine, see R. at 621, 625.  Miller repeatedly reported symptoms of back pain, and physical examinations indicated occasional lumbar spine tenderness.  Id. at 404.  Impressions also included positive straight leg raise tests, as well as increased back pain during testing.  Id. at 413.  However, reports also indicated that Miller regularly walked with a normal gait and retained full strength in her extremities.  Id. at 347, 385, 413, 426, 431.  Finally, Miller also demonstrated full range of motion of both her spine and extremities during multiple examinations.  Id. at 347, 381, 431, 434.  The record was consistent with the conclusion that Miller's physical impairments, while no doubt causing Miller significant discomfort, did not preclude her from carrying out all light work within the meaning of the applicable regulations.  The court concludes that

14

the ALJ's findings as to Miller's physical impairments were supported by substantial evidence on the record.

As to Miller's mental impairments, the ALJ concluded that the evidence showed that Miller had the capacity to operate in a work environment where she would be required to carry out simple tasks with few changes, and occasional interaction with coworkers. Id. at 24. The ALJ concluded that the medical evidence showed that Miller suffered from occasional depressive episodes, "anxiety, panic attacks, emotional instability, and some reduced concentration abilities." Id. at 27. However, the ALJ also noted that the record showed that Miller frequently presented with "normal cognitive abilities, and an organized thought process." Id. These conclusions were also well supported by the record evidence. While Miller occasionally presented with a depressed or tearful affect, the record also indicated that Miller presented as neatly dressed, well-groomed, cooperative, and with organized thoughts. Id. at 557–60. Moreover, a consultative examination showed that Miller could carry out standard cognitive tasks, including spelling words backwards, retaining number sequences, and interpreting proverbs. Id. at 387. The record is consistent with the ALJ's findings that Miller occasionally suffered from depressed mood, anxiety, panic attacks, and reduced concentration abilities, but that she also frequently demonstrated normal cognitive abilities, and an organized thought process. Id. at 27. The ALJ's conclusion that Miller retained the mental capacity to carry out a job which required simple instructions, few changes, and occasional interaction with co-workers, is supported by substantial evidence on the record.

Because the ALJ's findings as to both Miller's physical and mental impairments is supported by substantial evidence on the record, the court denies Miller's implied request for remand on the basis of the ALJ's RFC determination.

2. Reliance on Vocational Expert Testimony

As noted above, see supra at 11, Miller challenges the testimony of the vocational expert, and, implicitly, the ALJ's reliance thereon. See Miller Mem. at 23 ("I completely disagree with the vocational expert. I don't care what experience she has. She is not living in my body."). At the hearing, the vocational expert testified that someone of Miller's age, education, and work experience, and with the RFC determined by the ALJ, would not be able to perform Miller's past work. R. at 50. The vocational expert added, however, that there were other jobs in the national economy, namely a marker for prices, an order caller, and a garment sorter, which a person fitting the description provided would be able to perform. Id.; see also Def.'s Mem. at 12–13. The vocational expert concluded that, if the person described were not able to maintain concentration throughout the day, such that they were off-task 15 percent of the time, or if the person was consistently absent at least one day per week, there would not be any jobs in the national economy that the person could perform. R. at 50–51.

The ALJ determined that the vocational expert's testimony was "consistent with the information in the Dictionary of Occupational Titles" ("DOT"). R. at 32. Having reviewed the DOT, the court agrees. The ALJ determined that a finding of "not disabled" was appropriate, based on Miller's demographics and work history, as well as the vocational expert's testimony. Id. Insofar as Miller objects to the use of the vocational expert's testimony in determining that she was not disabled, the

Commissioner correctly notes that the ALJ "appropriately relied on the [vocational expert] testimony to carry the Commissioner's burden of proof." Def.'s Mem. at 13. The Second Circuit has held that an ALJ may rely on a vocational expert's testimony that is based on assumptions that find substantial support in the record. See Claymore v. Astrue, 519 F. App'x 36, 38–39 (2d Cir. 2013) (citing Dumas v. Schweiker, 712 F.2d 1545, 1553–54 (2d Cir.1983)). As noted, see supra at 14, the RFC that was the basis of the hypothetical posed to the vocational expert had substantial support in the record. Therefore, remand on the basis of the ALJ's reliance on the vocational expert's testimony is denied.

### D. Duty to Develop Record

Even where a social security claimant is represented by counsel, the Second Circuit has held that ALJ's must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir.2009)). Therefore, the ALJ must "develop the facts and develop the arguments both for and against the granting of benefits. Id. at 113.

Miller argues that the ALJ failed to adequately develop the record. See Miller Mem. at 23. She argues that the ALJ failed to seek records listed in a request for subpoenas, dated August 3, 2016. R. at 127–28. The request noted Miller's belief that "the documents and records indicated will provide significant evidence to support [Miller's] case for disability benefits." R. at 127. Miller sought documents from seven sources detailing the reasons for employment terminations and evictions, as well as

records of "2-1-1" phone calls Miller placed from July 2015 to the date of her letter. See id. at 127–28.

The Commissioner argues that the ALJ did not fail to develop the record, because the decision was based on a complete record, and because there was "no indication" that Miller's submitted requests were "related to medical records or that the contacts on the list would or could provide any insight as to Plaintiff's ability to perform work activity during the relevant period." Def.'s Mem. at 13–14. Moreover, the Commissioner argues, the ALJ had a record of around 300 pages of medical evidence from the Plaintiff's medical providers and consultative medical providers. Id. at 14.

As noted, the ALJ has an affirmative duty to develop the record. However, the relevant regulations make clear that the ALJ's responsibility is focused on development of the claimant's "complete medical history." 20 C.F.R. § 404.1512; Hooper v. Colvin, 199 F. Supp. 3d 796, 806 (S.D.N.Y. 2016) ("[U]nder the applicable regulations, the ALJ is required to 'develop a complete medical record before making a disability determination.'") (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996)). As the Commissioner argues, the ALJ had before him a thorough medical record, which included reports from treating and consultative medical sources regarding both Miller's physical and mental impairments. The records Miller sought, according to the descriptions submitted, related generally to issues of homelessness and unemployment. While no doubt important to Miller's overall wellbeing, the requests do not pertain to medical records, diagnosis, or treatment related to her claimed disability. Because Miller's requests were not related to the ALJ's requirement to develop a complete medical record, and because the ALJ in fact based the disability determination on a

detailed record of treatment and examination from multiple medical sources, the court concludes that the ALJ did not fail to adequately develop the record. Therefore, Miller's request for remand on this basis is denied.

## VI. CONCLUSION

For the reasons stated above, the Motion to Reverse or Remand the Decision of the Commissioner is **DENIED**, and the Motion for Order Affirming the Decision of the Commissioner is **GRANTED**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of December 2018.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge